United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**JERRY EDDIE PATLAN,**
**Petitioner,**
**v.**
**C.E. DUCART,**
**Respondent.**

**Case No. 15-cv-2372-TEH**

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Jerry Eddie Patlan, a state prisoner, has filed this pro se petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. Respondent was ordered to show cause why the petition should not be granted. Respondent has filed an answer. For the reasons set forth below, the petition is DENIED.

I

Petitioner was charged with possession of methamphetamine for sale and transportation of methamphetamine. Clerk's Transcript ("CT") at 80-81. Petitioner had prior convictions for possession of methamphetamine for sale and sale of PCP, two prior serious felony convictions, and a prior prison term. Id. at 82-83. At the first trial the jury was deadlocked and a mistrial was declared. Id. at 173-74. Petitioner was found guilty of both charges at a second trial. Id. at 372-73. He was sentenced to a term of 25 years to life in prison. Id. at 502-04.

The California Court of Appeal affirmed the conviction. People v. Patlan, No. H038200, 2014 WL 772608 (Cal. Ct. App. Feb. 26, 2014). The California Supreme Court denied review. Answer, Ex. 8.

II

The following factual background is taken from the order of the California Court of Appeal:[1]

> On the afternoon of June 28, 2010, San Jose Police Officer Jenni Byrd was on patrol in a marked police car when she saw a black truck (later identified as a Toyota 4Runner) fail to stop completely at a stop sign. Officer Byrd followed the vehicle around a corner and activated her emergency lights to effect a traffic stop as the 4Runner turned into a driveway. After stopping her patrol car and partially blocking the driveway, Officer Byrd began to exit her patrol car and noticed the driver (later identified as defendant) of the 4Runner crouch down with his head and right shoulder in a movement consistent with reaching for something with his right arm. Almost simultaneously, the passenger, Robert Contreras, exited the 4Runner with a backpack in one hand and began walking away from the vehicle. As Contreras exited the vehicle, Officer Byrd noticed a small blue object fall from the open passenger door onto the driveway. Officer Byrd ordered Contreras back into the vehicle and Contreras complied.
>
> When Officer Byrd went to the driver's side window, she noticed defendant had a workbag on his lap that contained multiple pairs of blue latex gloves. There was also a single blue latex glove in the center console. Officer Byrd placed both men in handcuffs and then moved defendant to another officer's patrol car and Contreras to the curb.
>
> Officer Byrd then investigated the blue object, which had fallen "within the swing" of the passenger door. The object turned out to be a blue latex glove, similar to those

[1] This summary is presumed correct. Hernandez v. Small, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

**found in the workbag and on the center console. It was missing the middle finger and contained eight baggies and one bindle. The containers held an off-white crystalline substance that was later identified as over 15 grams of methamphetamine.**

**Officer Byrd interviewed both occupants separately shortly after the traffic stop and provided <u>Miranda</u> warnings to each of them. Though she had not actually seen whether either occupant discarded the blue object, she informed both of them that she saw Contreras discard the drugs. Officer Byrd testified at trial that this lie was part of an investigative technique to attempt to gain an admission from defendant that he was responsible for the methamphetamine. After learning that defendant and Contreras were cousins, she theorized that defendant would accept responsibility for the drugs rather than seeing his cousin get in trouble. Neither defendant nor Contreras accepted responsibility.**

**During the traffic stop and interviews, Officer Byrd determined that defendant appeared to be under the influence of methamphetamine but that Contreras did not. Defendant also admitted to another officer that he had "done a line earlier" that day, which Officer Byrd understood as meaning he had used methamphetamine. Based on defendant's appearance, his admission of drug use, and the presence of blue gloves in defendant's workbag that matched the glove containing the methamphetamine, Officer Byrd arrested defendant. He was later charged with possession for sale of methamphetamine (Health & Saf.Code, § 11378) and transportation of methamphetamine (Health & Saf.Code, § 11379, subd. (a)).**

**Defendant's first trial resulted in a mistrial. At defendant's second trial, the People presented DNA evidence obtained from samples taken from the baggies and bindle that determined defendant was a likely contributor to the DNA on the baggies. This evidence had not been presented at the first trial. At both trials, defendant's theory was that the methamphetamine in the vehicle belonged to Contreras, not defendant.**

**At the close of evidence in the second trial, defendant requested a pinpoint jury**

> instruction regarding the legal definition of "control" for purposes of possession for sale of a controlled substance. After a hearing on the issue, the court found CALCRIM No. 2302 adequately defined the term "control." The second jury convicted defendant of both possession for sale and transportation of methamphetamine. After the jury was discharged, the bifurcated issue of defendant's prior convictions was tried to the court, which found the existence of two prior strikes. The court denied defendant's Romero motion, and sentenced defendant to 25 years to life in prison. Defendant timely appealed.

Patlan, 2014 WL 772608, at *1-2.

III

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Additionally, habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (internal quotation marks omitted).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

**law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.**

**"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Felkner v. Jackson, 562 U.S. 594, 598 (2011).**

**Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the**

United States District Court
Northern District of California

dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

When applying these standards, the federal court should review the "last reasoned decision" by the state courts. See Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the state's highest court, the court "looks through" to the last reasoned opinion. See Ylst, 501 U.S. at 804.

With these principles in mind regarding the standard and scope of review on federal habeas, the Court addresses Petitioner's claims. Petitioner alleges: (1) trial court error for denying his request to instruct the jury with his proposed instructions on the terms "possession" and "control"; (2) prosecutorial misconduct during the closing argument when the prosecutor (a) disparaged defense counsel (b) inappropriately vouched for a witness and commented on Petitioner's right to remain silent; (3) ineffective assistance of counsel; (4) cumulative error; and (5) insufficient evidence to prove a prior strike conviction.

United States District Court
Northern District of California

**IV**

**A**

**Petitioner first contends that the trial court erred by refusing to issue his proposed jury instruction with respect to the meaning of "possession" and "control." He also argues that by denying his proposed instruction the trial court prevented him from presenting his defense theory of the case.**

**The California Court of Appeal set forth the relevant background and denied this claim:**

> **Defendant claims that by refusing to give his requested pinpoint instruction, the trial court failed to define an element of possession of a controlled substance for sale and failed to instruct the jury on a defense theory. The trial court included CALCRIM No. 2302 in the instructions read to the jury. This instruction lays out the following elements for possession for sale of methamphetamine: (1) possession of a controlled substance by defendant; (2) defendant's knowledge of the presence of a controlled substance; (3) defendant's knowledge that the substance was in fact a controlled substance; (4) defendant's intent to sell the substance; (5) the controlled substance was methamphetamine; and (6) the controlled substance was in a usable amount. (CALCRIM No. 2302.) Regarding possession and control, the court included bracketed language from the form instruction, stating: "A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person."**
>
> **In addition to this form instruction, defendant requested that the court provide a pinpoint instruction paraphrased from the language of <u>People v. Redrick</u> (1961) 55 Cal. 2d 282, 285. The proposed instruction stated, in relevant part, "the defendant cannot be convicted of unlawful possession merely because he had an opportunity to access a place where controlled substances were found." Defendant's counsel claimed the**

> **pinpoint instruction was necessary to differentiate between mere access to the methamphetamine in a car driven by defendant and the control necessary to constitute a violation of Health and Safety Code section 11378. The trial court denied defendant's request, finding CALCRIM No. 2302 adequately and accurately described the crime of possession of methamphetamine for sale.**
>
> **. . .**
>
> **1. The Instructions Adequately Defined All Elements of Possession of Methamphetamine For Sale**
>
> **Defendant claims the version of CALCRIM No. 2302 provided to the jury was inadequate because a juror could have incorrectly concluded defendant could be convicted based on his mere proximity and access to the methamphetamine in the vehicle. An identical claim was considered and rejected in <u>People v. Montero</u> (2007) 155 Cal. App. 4th 1170 (<u>Montero</u>). In <u>Montero</u>, after finding a baggie containing methamphetamine during a parole search of the defendant, officers searched the garage where Montero had been standing and discovered three additional baggies containing methamphetamine that matched the first baggie recovered from the defendant. (<u>Id</u>. at pp. 1173–1174.) On appeal from his conviction for possession for sale, the defendant claimed that CALCRIM No. 2302 erroneously omitted the elements of "'domination and control'" from the definition of possession for sale. (<u>Montero</u>, <u>supra</u>, at p. 1174.)**
>
> **In rejecting the defendant's claim, the court noted that the instruction "requires the defendant to have control over the substance." (<u>Montero</u>, <u>supra</u>, 155 Cal. App. 4th at p. 1180.) Because of this control requirement, the court concluded "the jury could not find defendant guilty simply due to his proximity to the substance" and that "[n]o reasonable juror would have believed that proximity alone equaled control." (<u>Ibid</u>.)**
>
> **We agree with <u>Montero's</u> reasoning and find defendant's argument unpersuasive. The relevant language of CALCRIM No. 2302 states that a defendant possesses a controlled substance if he or she "has control over it**

> or the right to control it...." (CALCRIM No. 2302.) From this, a reasonable juror would understand that possession involves control over the substance and would not encompass merely having control over the vehicle in which the substance was located. To hold otherwise would assume jurors are incapable of understanding instructions provided in plain English, which is something we cannot do. (See Ramos, supra, 163 Cal. App. 4th at p. 1088.) If anything, the requested instruction would have been duplicative of CALCRIM No. 2302. Courts may refuse to give instructions that are duplicative of other instructions. (People v. Dieguez (2001) 89 Cal.App.4th 266, 277.)
>
> 2. The Instructions Informed the Jury of the Defense Theory
>
> We also find defendant's "theory of the case" claim to be without merit. Defendant's theory was that Contreras, not defendant, possessed the methamphetamine. Defendant's proposed instruction sought to further clarify the elements of Health and Safety Code section 11378 by informing the jury that mere access to a controlled substance does not prove possession for sale. However, as discussed in greater detail above, CALCRIM No. 2302 explains that possession requires more than mere proximity by stating the defendant must have "control over it or the right to control it...." (CALCRIM No. 2302; see Montero, supra, 155 Cal. App. 4th at p. 1180.)
>
> While a specific additional instruction might have been warranted if defendant had raised a complex theory regarding his innocence, his theory—essentially, "the other guy did it"—is a commonly encountered defense. The definition of possession in CALCRIM No. 2302, coupled with defense counsel's closing argument, which focused on evidence supporting defendant's theory that Contreras possessed the methamphetamine, provided adequate information to the jury regarding defendant's theory of the case.

Patlan, 2014 WL 772608, at *2-4 (footnotes omitted).

A challenge to a jury instruction solely as an error under state law is not cognizable in federal habeas corpus proceedings.

United States District Court
Northern District of California

See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding. See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. See id.

Due process requires that "'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). Therefore, a criminal defendant is entitled to adequate instructions on the defense theory of the case. See Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 2000).

Due process does not require that an instruction be given unless the evidence supports it. See Hopper v. Evans, 456 U.S. 605, 611 (1982); Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005). The defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory. United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996). Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury. See Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995).

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. See Walker v. Endell, 850 F.2d 470, 475-76 (9th Cir. 1987) (citing Henderson v. Kibbe, 431 U.S. 145, 155 (1977)). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction

United States District Court
Northern District of California

**bears an "'especially heavy burden.'" Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson, 431 U.S. at 155).**

**Petitioner has failed to show that the state court's denial of this claim was an unreasonable application of Supreme Court authority. The California Court of Appeal found that the standard instruction provided by the trial court properly and adequately addressed the issue of control of the drugs as opposed to mere proximity. The instruction noted that "[a] person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person." Patlan, 2014 WL 772608, at *2. The state court agreed with previous case law and found that no reasonable juror would believe that mere proximity would equal control. Nor has Petitioner shown that the instruction given deleted an element of the offense. The state court's determination was not objectively unreasonable and Petitioner has not shown evidence to support his claim that the trial court erred in not issuing his requested instruction. Even if there was an error, it was harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993), based on the evidence presented at trial that showed more than mere proximity between Petitioner and the drugs.**

**The California Court of Appeal also held that denying Petitioner's requested instruction did not deny him the ability to present the defense theory of the case. The state court noted that Petitioner's theory was that the drugs belonged to the other individual in the car and that this is a common defense.**

United States District Court
Northern District of California

**Therefore, no additional instruction was required. The instruction provided to the jury adequately discussed possession and control, and trial counsel still presented many strong arguments to forward its theory that the drugs belonged to the other individual. Because Petitioner has not shown an unreasonable application of Supreme Court authority, this claim is denied.**

**B**

**Petitioner next argues that the prosecutor committed misconduct in closing argument by disparaging defense counsel, vouching for a witness, and improperly commenting on Petitioner's right to remain silent.**

**1**

**The California Court of Appeal set forth the relevant background and denied this claim:**

> **During her closing argument, the prosecutor made the following statements: "It is my job as a district attorney to prove to you the case beyond a reasonable doubt. It is my job to present to you facts, facts that lead you to an abiding conviction to [sic] the truth of the charge. [¶] The defense's role is very different. The defense's role is to cause you to doubt the truth." Defense counsel objected to the foregoing statement as improper argument, which the court sustained. The court did not immediately provide the jury admonition requested by defense counsel.**
>
> **When the prosecutor continued the same line of argument by stating "they have built the case around . . . what the defense believes that the evidence actually is," defense counsel objected again and the court, after holding a sidebar, provided the following admonition to the jury: "Ladies and gentlemen of the jury, I want to remind you that it is your role as jurors to serve as independent judges of the facts, all right. That is, you**

**are to determine from the evidence presented in this court and the evidence alone what facts have been proven, and you will ultimately, from those facts, determine whether or not the People have met their burden of proving the defendant's guilt beyond a reasonable doubt. [¶] You are not to be sidetracked, confused or in any way to deviate from that role by your attempts to or in any attempt to evaluate how you feel either party may have done their job as an attorney in this trial, all right. Your only job is to deal with evidence and what it does or does not prove."**

**On appeal, defendant claims the prosecutor's remarks constitute misconduct requiring reversal of defendant's conviction because they improperly disparaged defense counsel. "Personal attacks on the integrity of opposing counsel constitute prosecutorial misconduct." (Herring, supra, 20 Cal. App. 4th at p. 1076.) Defendant claims the prosecutor's conduct in this case is "almost identical" to the prosecutor's conduct in Herring and encourages us to follow that opinion and reverse defendant's conviction. We disagree.**

**In Herring, the prosecutor stated during the closing argument: "'My people are victims. His people are rapists, murderers, robbers, child molesters. . . . He does not want you to hear the truth.'" (Herring, supra, 20 Cal. App. 4th at p. 1073.) Based on these statements, as well as others targeting the defendant using racially insensitive language, the Herring court reversed the defendant's conviction, holding that "[i]t is improper for the prosecutor to imply that defense counsel has fabricated evidence or to otherwise malign defense counsel's character." (Id. at p. 1075.)**

**Unlike the prosecutor's statements in Herring, here the prosecutor's main improper statement was that the role of defense counsel "is to cause you to doubt the truth." Her statement, while incorrect and improper, is far from "identical" to those made in Herring and did not make the trial so fundamentally unfair as to require reversal. Further, the trial court here mitigated any damage by admonishing the jury soon after the prosecutor's statement to "serve as independent judges of the facts" and not**



United States District Court
Northern District of California

United States District Court
Northern District of California

> "attempt to evaluate how you feel either party may have done their job as an attorney. . . ." For these reasons, we find the prosecutor's improper statement did not rise to the level of misconduct requiring reversal.

Patlan, 2014 WL 772608, at *4-5.

Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. Darden v. Wainwright, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Under Darden, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005). A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995).

A prosecutor may not gratuitously attack a defendant's choice of counsel or defense counsel's integrity and veracity. See Bruno v. Rushen, 721 F.2d 1193, 1195 (9th Cir. 1983) (prosecutor's comments equating defendant's hiring of counsel with guilt and comments attacking integrity of defense counsel without evidence are improper and are errors of constitutional

**dimension). Nor may the prosecutor attack defense counsel's legitimate trial tactics. See United States v. Frederick, 78 F.3d 1370, 1379-80 (9th Cir. 1996) (prosecutor's back-handed compliment to defense lawyer for confusing witness, which appeared to imply that his methods were somewhat underhanded and designed to prevent truth from coming out, was improper but not alone reversible error). However, there is no constitutional error unless the comments were prejudicial to the point of denying the defendant a fair trial. Compare United States v. Rodrigues, 159 F.3d 439, 449-51 (9th Cir. 1998) (combination of prosecutor's misstatement of the law with slander of defense counsel was prejudicial where there was no rebuke of false accusations by the court, no response by the vilified lawyer allowed and no curative instruction given), amended, 170 F.3d 881 (9th Cir. 1999) with United States v. Foster, 711 F.2d 871, 883 (9th Cir. 1983) (implication that defense counsel was part of conspiracy to distribute heroin was neutralized by prosecutor's corrective statement in response to objection by defense counsel). In addition, Brecht requires that a state prisoner show that the error had a substantial and injurious effect or influence in determining the jury's verdict. See Williams v. Borg, 139 F.3d 737, 745 (9th Cir. 1998).**

**The California Court of Appeal found that the prosecutor's two statements were incorrect and improper. Yet, the court held that the statements did not render the trial fundamentally unfair to require reversal. This conclusion was not objectively unreasonable. The California Court of Appeal noted that nearly immediately after the statements, the trial court admonished the**

United States District Court
Northern District of California

**jury that they were the independent judges of the facts and were not to be confused by the attorneys or by the attorneys' performance of their duties. The statements were two isolated incidents and Petitioner has failed to show that the state court's finding that he received a fair trial despite these two isolated incidents was unreasonable. Because Petitioner has failed to meet his high burden, this claim is denied.**

**2**

**The California Court of Appeal also denied Petitioner's claim that vouching for a police witness and making improper comments about Petitioner's right to remain silent constituted prosecutorial misconduct:**

> **Defendant's closing argument attacked Officer Byrd's testimony by highlighting her inconsistent testimony regarding who threw the blue object as well as her demeanor throughout her testimony. Specifically, the defense focused on Officer Byrd's testimony at trial regarding the interview with defendant immediately after the traffic stop, where she told defendant she had seen Contreras, not defendant, throw the blue object. This testimony reflected only what Officer Byrd stated during the interview and did not address defendant's responses to Officer Byrd's questions.**
>
> **During the People's rebuttal to defendant's closing argument, the prosecutor stated: "And perhaps Officer Byrd was a little naive to think that she could appeal to the defendant's sense of family when she took the strategy, the interrogation strategy that she did. It clearly did not work. But that's what she was trying to do. She was trying to say to [Petitioner], your cousin's going to go down for this. She knew Mr. Contreras did not possess those drugs. She was hoping, naively, that he would step up and not let his cousin take the fall." The trial court overruled defendant's objection that the prosecutor was commenting on defendant's post-Miranda silence in violation of the**

United States District Court
Northern District of California

> **United States Supreme Court opinions of Griffin and Doyle.**
>
> **Focusing on the prosecutor's statement that Officer Byrd's tactic of attempting to elicit a confession from defendant by claiming she saw Contreras throw the methamphetamine "did not work," defendant argues the prosecution impermissibly relied on defendant's post-Miranda silence and the trial court erred in overruling his objection. Assuming defendant actually invoked his right to remain silent, his argument is without merit because, if anything, his silence raised an inference of innocence rather than guilt.**
>
> **Implicit in the Fifth Amendment's right against self-incrimination as well as the rationale behind Miranda warnings is an understanding "that exercise of the right of silence will not be penalized." (People v. Eshelman (1990) 225 Cal. App. 3d 1513, 1520.) Eshelman illustrates this concept. There, during both cross examination of the defendant and the prosecutor's closing argument, the prosecutor focused on the defendant's refusal to answer questions the murder victim's mother had previously asked the defendant. (Id. at p. 1519.) During the closing argument, the prosecutor went so far as to ask the jury "What was [the defendant] trying to hide?" (Ibid.) The appellate court reversed the defendant's conviction, holding "the improper purpose of the prosecutor's questions was to utilize appellant's silence to impeach his defense and thereby to solemnize the silence into evidence of guilt." (Id. at p. 1521.)**
>
> **Unlike the prosecutor's statements in Eshelman, which focused on defendant's conduct, here the prosecutor discussed Officer Byrd's interview strategy in order to rehabilitate the officer. The prosecutor's rebuttal came in response to attacks on Officer Byrd's credibility during the defense's closing argument. Moreover, as stated above, to the extent the prosecutor's statements discussed defendant's post-Miranda silence, that silence creates no inference of guilt. Officer Byrd's statements implicated Contreras, not defendant, as the person responsible for the methamphetamine. Because the prosecutor did not rely on post-Miranda silence to defendant's detriment, we find no prosecutorial misconduct.**

Patlan, 2014 WL 772608, at *5-6 (footnote omitted).

Post-arrest silence after Miranda warnings cannot be commented upon or used by the prosecution. See Doyle v. Ohio, 426 U.S. 610, 611 (1976). However, a prosecutor may comment on post-Miranda silence in response to defense argument. See United States v. Robinson, 485 U.S. 25, 32 (1988); see also United States v. Norwood, 603 F.3d 1063, 1070 (9th Cir. 2010) (reversal not warranted where prosecutor's comments merely responded to defense counsel's implication of investigative misconduct, the comment was an isolated incident that did not stress an inference of guilt from silence, and was followed by a curative instruction).

Furthermore, as a general rule, "a prosecutor may not express his personal opinion of the defendant's guilt or his belief in the credibility of [government] witnesses." United States v. McKoy, 771 F.2d 1207, 1211 (9th Cir. 1985). Improper vouching for the credibility of a witness occurs when the prosecutor places the prestige of the government behind the witness or suggests that information not presented to the jury supports the witness's testimony. United States v. Young, 470 U.S. 1, 7 n.3, 11-12 (1985). To warrant habeas relief, prosecutorial vouching must so infect the trial with unfairness as to make the resulting conviction a denial of due process. Davis v. Woodford, 384 F.3d 628, 644 (9th Cir. 2004).

During closing argument, Petitioner's trial counsel argued that the police officer's testimony was inconsistent. In a rebuttal argument, the prosecutor noted that the police officer,

United States District Court
Northern District of California

**when questioning Petitioner, had been deliberately using a strategy in hopes that Petitioner would make an admission regarding the drugs. The prosecutor stated that the police officer, "was hoping, naively, that [Petitioner] would step up and not let his cousin [the other person in the car] take the fall." Patlan, 2014 WL 772608, at *5. The state court found that this statement by the prosecutor was not an improper statement regarding Petitioner's post-Miranda silence. Petitioner has not shown that this was an unreasonable determination.**

**The state court noted that it was not clear if Petitioner even invoked his right to remain silent and if he did, the silence was an inference of innocence, not guilt. Moreover, the prosecutor's comment was in her rebuttal argument and was a specific response to statements made by trial counsel in closing argument. Even if the prosecutor was commenting on Petitioner's post-Miranda silence, it was a reasonable response to trial counsel's argument and was not improper. See Norwood, 603 F.3d at 1070.**

**Nor has Petitioner shown that the prosecutor's statement, made on rebuttal regarding the police officer's interrogation strategy, improperly bolstered the police officer's testimony. The statement did not place the prestige of the government behind the witness, and the prosecutor was specifically responding to trial counsel's closing argument. The prosecutor was merely repeating the police officer's explanation of her strategy in attempting to obtain an admission from Petitioner. Petitioner has failed to show that the state court opinion denying this**

**claim and finding no prejudice from the prosecutor's response was unreasonable. See Young, 470 U.S. at 11-12 (prosecutor's response to defense counsel's argument must be viewed in the context of the entire trial and the probable effect on the jury's ability to judge the evidence fairly).**

**C**

**Petitioner next argues that trial counsel was ineffective for failing to object to the prosecutor's closing argument on the ground that it assumed facts not in evidence.**

**The California Court of Appeal denied this claim:**

> **Defendant argues the prosecutor's statement that the defense's role was to make the jury "doubt the truth" assumed facts not in evidence because it suggested that the prosecutor knew what "the truth" was. Even assuming counsel was deficient for not objecting on that basis, defendant can show no prejudice because, as discussed above, the trial court sustained counsel's objection as it was presented and admonished the jury to be "independent judges of the facts. . . ." In essence, the court's admonition, which it related to the jurors soon after the objectionable statement, reminded them that they were responsible for determining "the truth." As such, defendant suffered no prejudice from this omission. (People v. Pigage (2003) 112 Cal. App. 4th 1359, 1375 ["a timely admonition from the court generally cures any harm"].)**
>
> **Defendant also claims defense counsel was deficient for failing to object to the prosecutor's reference to facts not in evidence to bolster Officer Byrd's credibility. Defense counsel spent the majority of his closing argument assailing Officer Byrd's credibility by pointing out inconsistencies in her statements at various points during the investigation and the two trials. In particular, defendant argued Officer Byrd's testimony could not be trusted because she initially told both defendant and Contreras that she saw Contreras throw the methamphetamine-filled glove out of the**

> vehicle but later testified that she did not actually see who discarded the glove.
>
> The prosecutor's rebuttal argument attempted to rehabilitate the officer's credibility. The prosecutor referred to Officer Byrd's testimony that the inconsistent statements were part of a tactical lie designed to elicit a confession from defendant. Had the prosecutor developed this explanation herself, argument on that point would constitute improper vouching. However, because the prosecutor was merely relating an explanation offered by Officer Byrd in her testimony, the prosecution's conduct involved permissible "argument from facts in the record directed to the credibility of witnesses. . . ." (People v. Sully (1991) 53 Cal. 3d 1195, 1235–1236 [rejecting claim of improper vouching when prosecutor relied on facts in the record to bolster witness credibility].) A prosecutor may not refer to evidence outside the record to vouch for the credibility of witnesses or bolster the veracity of witnesses' testimony. (People v. Cook (2006) 39 Cal. 4th 566, 593.) But this prohibition is not implicated where, as here, the prosecutor relies on evidence in the record.

Patlan, 2014 WL 772608, at *6-7.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness"

**under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>.**

**Petitioner has not shown that the state court's denial of this claim was an unreasonable application of Supreme Court authority. Even assuming that Petitioner could show that trial counsel was deficient, he cannot demonstrate prejudice. Trial counsel did object to the prosecutor's statement regarding defense counsel's role being to make the jury doubt the truth. While it was for different grounds, the trial court sustained the objection and admonished the jury. Petitioner has not shown that the outcome of the trial would have been different had trial counsel objected on different grounds.**

**Similarly, trial counsel also objected to the prosecutor's statement, made in an attempt to explain the police officer's testimony, that may have alluded to Petitioner's post-<u>Miranda</u> silence. While the trial court overruled the objection, Petitioner has not shown that trial counsel was deficient. Petitioner argues that trial counsel should have objected on additional grounds; namely, that the statement contained facts outside of the record. The California Court of Appeal correctly noted that the prosecutor's statement reflected testimony from the police officer. Because the prosecutor was describing evidence presented to the jury, any objection regarding facts**

United States District Court
Northern District of California

**outside of the record would have also been overruled. Petitioner cannot show that trial counsel was deficient or that he suffered prejudice, therefore this claim is denied.**

**D**

**Petitioner asserts that the cumulative effect of the errors discussed above deprived him of his right to due process and a fair trial. The California Court of Appeal denied this claim. Patlan, 2014 WL 772608, at *7.**

**In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution). Cumulative error is more likely to be found prejudicial when the government's case is weak. See id.; see, e.g., Thomas v Hubbard, 273 F.3d 1164, 1180 (9th Cir. 2002) (noting that the only substantial evidence implicating the defendant was the uncorroborated testimony of a person who had both a motive and an opportunity to commit the crime), overruled on other grounds by Payton v. Woodford, 299 F.3d 815, 829 n.11 (9th Cir. 2002). However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. See Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011). Similarly, there can be no cumulative error when there has not been more than one error. United States v. Solorio, 669 F.3d 943, 956 (9th Cir. 2012).**

United States District Court
Northern District of California

**The state court's denial of this claim was not unreasonable. Moreover, this Court has not found any constitutional errors, let alone multiple errors that cumulatively could allow for reversal. Even assuming there were errors with the jury instructions or with the prosecutor's closing statement, these errors were not so prejudicial as to warrant habeas relief. This claim is denied.**

**E**

**Finally, Petitioner contends that there was insufficient evidence to establish that a 1982 conviction qualified as a strike under state sentencing law. The California Court of Appeal set forth the relevant state law and background and denied this claim:**

> **Section 667 governs sentence enhancements for habitual criminals. As in effect in 2012 when the trial court sentenced defendant, section 667, subdivision (e)(2)(A) provided for "an indefinite term of life imprisonment" for defendants with "two or more prior felony convictions as defined in subdivision (d) that have been pled and proved. . . ." (Former § 667, subd. (e)(2)(A), Stats. 1994, ch. 12, § 1.) Section 667, subdivision (d) provides that prior felony convictions included "[a]ny offense defined in subdivision (c) of section 667.5 as a violent felony or any offense defined in subdivision (c) of section 1192.7 as a serious felony in this state." (§ 667, subd. (d)(1).) These prior felony convictions are commonly referred to as "strikes."**
>
> **To prove prior strikes, "[t]he People must prove each element of an alleged sentence enhancement beyond reasonable doubt." (People v. Delgado (2008) 43 Cal.4th 1059, 1065 (Delgado ).) While this can often be accomplished by reference to the statute upon which the defendant's prior conviction is based, where it is unclear from a specified statute whether the conviction was for a serious or violent felony, "otherwise admissible evidence from the entire record of**

United States District Court
Northern District of California

**the conviction may be examined to resolve the issue." (Ibid.) Such evidence can include "certified documents from the record of the prior court proceeding . . . including the abstract of judgment describing the prior offense." (Id. at p. 1066.)**

**Certified documents create a presumption of conviction that can only be overcome by evidence calling into question "'the authenticity, accuracy, or sufficiency of the prior conviction records. . . .' [Citation.]" (Delgado, supra, 43 Cal. 4th at p. 1066.) "[I]f the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense." (Ibid.) Once a trial court has found the existence of a prior strike conviction, however, on appeal "we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence." (Id. at p. 1067.)**

**While defendant concedes the existence of one strike, he argues the record does not adequately establish his 1982 conviction under section 245, subdivision (a) was a strike. During the sentencing phase of defendant's current possession for sale case, the prosecution introduced an abstract of judgment from 1982 (Santa Clara County Super. Ct. Case No. 82018) (1982 Felony) indicating defendant pleaded guilty to "PC 245(a) Assault with a Deadly Weapon." The criminal complaint from the 1982 Felony was also entered into evidence. Count two of that complaint charged defendant with violating section 245, subdivision (a) by committing "an assault upon the person . . . with a deadly weapon or instrument, to wit: a TIRE IRON, and by means of force likely to produce great bodily injury." Defendant claims the inconsistency between the complaint and abstract made it impossible to determine whether defendant's prior conviction was for assault with a deadly weapon—a serious felony pursuant to section 1192.7, subdivision (c)(31)—or merely assault by means of force likely to produce great bodily injury, which is not serious or violent for purposes of section 667. (See Delgado, supra, 43 Cal. 4th at p. 1065 ["assault merely by means likely to produce [great bodily injury],**

without the additional element of personal infliction, is not included in the list of serious felonies"].)

In support, defendant relies on Delgado, where the Supreme Court considered a prior conviction for a violation of a version of section 245 similar to that in effect in 1982. (Delgado, supra, 43 Cal. 4th at p. 1065.) To determine whether substantial evidence supported the prior strike finding, the court turned to the official abstract of judgment for the defendant's section 245, subdivision (a) prior felony. That official abstract "first identifie[d] the statute under which the conviction occurred as 'PC' '245(A)(1),' then separately describe[d] the offense as 'Asslt w DWpn.'" (Delgado, supra, at p. 1069.) The court rejected the defendant's assertion that the foregoing description was ambiguous and concluded it "tracks one, but only one, of the two specific, discrete, disjunctive, and easily encapsulated forms of aggravated assault. . . ." (Ibid.)

Like the abstract in Delgado, the abstract for defendant's 1982 conviction unambiguously states the conviction was for "Assault with a Deadly Weapon." Applying Delgado, the abstract provides substantial evidence to support the trial court's finding that defendant's 1982 conviction was a qualifying strike. Defendant attempts to overcome this result by pointing to the alleged inconsistency between the abstract of judgment and the complaint, which charged defendant with both assault with a deadly weapon and assault by means of force likely to produce great bodily injury. Defendant relies on a line of cases where ambiguities in abstracts of judgment led courts to overturn prior strike findings. (See, e.g., People v. Rodriguez (1998) 17 Cal. 4th 253, 261–262 [overturning prior strike finding when abstract of judgment ambiguously listed § 245 violation as "ASLT GBI/DLY WPN"].) Here, however, because the abstract is unambiguous, we find these authorities inapposite.

We also find defendant's more general inconsistency argument unavailing. The complaint and abstract arose at different junctures in the case. The 1982 Felony complaint charged defendant with assault with



United States District Court
Northern District of California

> a deadly weapon and assault by means of force likely to produce great bodily injury, which may be viewed as alternative bases for the charged offense. But the abstract of judgment unambiguously identified the single type of assault for which defendant was convicted and no evidence calls into question its "'authenticity, accuracy, or sufficiency.'" (Delgado, supra, 43 Cal. 4th at p. 1066, quoting People v. Epps (2001) 25 Cal. 4th 19, 27.) The trial court's strike finding is therefore supported by substantial evidence.

Patlan, 2014 WL 772608, at *7-8 (footnote omitted).

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, see Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, see id. at 324.

The Supreme Court has emphasized that "Jackson claims face a high bar in federal habeas proceedings . . . ." Coleman v. Johnson, 132 S. Ct. 2060, 2062, 2064 (2012) (per curiam) (finding that the Third Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of Jackson when it engaged in "fine-grained factual parsing" to find that the evidence was insufficient to support petitioner's conviction). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne



United States District Court
Northern District of California

United States District Court
Northern District of California

**v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Payne, 982 F.2d at 338 (quoting Jackson, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt has there been a due process violation. Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.**

**In denying this claim the California Court of Appeal found that under state law the evidence used to establish the 1982 conviction as a strike was sufficient. The court noted that the abstract for this conviction clearly stated that the conviction was for "Assault with a Deadly Weapon," which was a qualifying strike. The Jackson standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16. The state court's ruling on the state law issue is binding on this Court.**

**However, "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law," Coleman, 132 S. Ct. at 2064, yet, Petitioner has not shown that the state court was objectively unreasonable in finding sufficient evidence to support the prior conviction as a strike in light of the high bar for Jackson claims. Nor has he demonstrated an unreasonable determination of the facts. The state court analyzed the documents used to make the determination and found there was sufficient evidence. Petitioner has failed to demonstrate this finding was unreasonable; therefore, this**

United States District Court
Northern District of California

**claim is denied.**

**V**

**For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.**

**Further, a Certificate of Appealability is DENIED. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals for the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.**

**The Clerk is directed to enter Judgment in favor of Respondent and against Petitioner, terminate any pending motions as moot and close the file.**

**IT IS SO ORDERED.**

**Dated: 03/16/2016**

**THELTON E. HENDERSON**
**United States District Judge**

**G:\PRO-SE\TEH\HC.15\Patlan2372.hc.docx**